**Christine SCHMIDT, Respondent/Cross–Appellant,**

v.

**William SCHMIDT, Appellant/Cross–Respondent.**

Nos. 70539, 71078.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 29, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 3, 1997.

Application to Transfer Denied
Aug. 19, 1997.

William G. Buchholz, II, Clayton, for Appellant.

Harold G. Johnson & Michell D. Johnson, St. Ann, for Respondent.

CRANDALL, Judge.

William Schmidt (Husband) appeals from the judgment of the trial court modifying a decree of dissolution. We affirm in part, reverse in part and remand.

On March 12, 1984, the marriage of Husband and Christine Schmidt (Wife) was dissolved. The dissolution decree granted custody of the couple's minor child to Wife and Husband was ordered to pay child support. In 1989, Wife filed a motion to modify the dissolution decree. On July 12, 1989, the trial court entered judgment modifying the decree and incorporating an agreement between the parties. This agreement provided that Husband would pay child support of $467.50 per month and "all tuition associated with a Catholic elementary education for said minor child in the amount of $104.00 per month."

On February 9, 1995, Wife filed a motion to modify. Wife alleged that circumstances and conditions had substantially changed because, among other things, the child's cost of education at a private Catholic High School would be substantially more than for grade school. After a hearing, the trial court entered judgment ordering Husband to pay $616.08 per month in child support which was the presumed child support provided by Form 14. In an amended judgment, the court found that application of the child support guidelines was inappropriate and deviation from the guidelines was necessitated by the child's educational expenses.[1] The court ordered Husband to pay child support of $775.00 per month and attorney's fees of $400.00. The court also ordered the support award be retroactive to the date of service thereby requiring Husband to pay $1,628.00. Husband raises two points on appeal.[2]

The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of

---

1. *See Woolridge v. Woolridge*, 915 S.W.2d 372, 378–79 (Mo.App.1996)(discussing the difference between a rejection of Form 14 calculations and a rebuttal of the presumed correct child support amount).

2. Wife filed a notice of cross-appeal but in her brief failed to raise any point asserting error by the trial court. Wife's cross-appeal is, therefore, considered abandoned.

the evidence or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court is given "due regard" for its opportunity to have judged the credibility of the witnesses. Rule 73.01(c)(2).

Husband first argues that there is not substantial evidence to support a finding that the educational expenses were necessary or met a particular need of his child.

Wife testified that the tuition, books, uniforms and activity fee for her daughter to attend Incarnate Word High School was $4,095.00. During direct examination Wife also testified as follows:

[WIFE'S COUNSEL] When it came time for your daughter to consider going to high school, did she have any discussion with you about her choice or her preference?

\* \* \* \* \* \*

[WIFE] Yes.

[WIFE'S COUNSEL] Did—And what—What discussion, if any, did you have with your daughter about high school?

[WIFE] When it came time to register her for high school, we discussed it; and this was her choice, Incarnate Word.

[WIFE's COUNSEL] Did she make inquiries or look into or consider any other high school?

[WIFE] They had high school days for eighth graders. On various occasions, she did tour a couple of other high schools. And still, Incarnate was her choice.

[WIFE'S COUNSEL] Are you here today on the motion to modify because your daughter wants to go to Incarnate Word?

[WIFE] Yes, I am.

[WIFE'S COUNSEL] Would [it] make any difference to you if she went to Incarnate Word or to any other high school?

[WIFE] In terms of her feelings, yes, it would make a big difference.

[WIFE'S COUNSEL] No I'm sorry. Let me—

[WIFE] To me no. I mean [daughter] will do well in terms of grades.

[WIFE'S COUNSEL] I'm sorry. Let me rephrase that question. I gather it's your daughter's preference and choice to go to Incarnate Word; is that true?

[WIFE] Correct.

[WIFE'S COUNSEL] Would it make any difference to you personally if she chose—What public high school district are you in?

[WIFE] Hazelwood.

[WIFE'S COUNSEL] And what high school would she go to?

[WIFE] Hazlewood Central, at the present.

[WIFE'S COUNSEL] All right. Or she could go to a Catholic high school. The archdiocesan high school would be Aquinas; is that true?

[WIFE] Correct.

[WIFE'S COUNSEL] And their tuition is something less than Incarnate Word; isn't it?

\* \* \* \* \* \*

[WIFE] I'm sorry. At Aquinas it's about $500 to $1000 less than Incarnate Word.

[WIFE'S COUNSEL] Then, would it make any difference to you if she chose a public high school or Aquinas or some other high school?

[WIFE] No.

[WIFE'S COUNSEL] Then why are you here today?

[WIFE] [Daughter] would like very much to go to Incarnate Word. This is the high school of her choice.

\* \* \* \* \* \*

[WIFE's COUNSEL] [Wife], do you believe that by your daughter staying at Incarnate Word, that this would be essential to her well-being?

[WIFE] Yes, I do.

During cross-examination Wife testified as follows:

[HUSBAND'S COUNSEL] Okay. You informed him she was going to Incarnate Word; is that correct?

[WIFE] I informed him that this was [daughter's] choice.

\* \* \* \* \* \*

[HUSBAND'S COUNSEL] Okay. And he told you that he was unwilling to pay for that?

[WIFE] Correct.

\* \* \* \* \* \*

[HUSBAND'S COUNSEL] And you went ahead and enrolled her anyhow; isn't that correct?

[WIFE] Yes. I had to enroll her in somewhere.

[HUSBAND'S COUNSEL] Okay. I mean, you could have enrolled her in Hazlewood Central; is that correct?

[WIFE] Correct.

[HUSBAND'S COUNSEL] You could have enrolled her in Aquinas–Mercy?

[WIFE] Correct.

[HUSBAND'S COUNSEL] You could have enrolled her in Rosary[?]

[WIFE] Correct.

[HUSBAND'S COUNSEL] Okay. And—But you chose to enroll her in Incarnate Word, knowing that it was $4,000 a year?

[WIFE] Correct.

[HUSBAND'S COUNSEL] And it was something that you could not afford?

[WIFE] Correct.

\* \* \* \* \* \*

[HUSBAND'S COUNSEL] Okay. Now, with regard to your own education, were you educated in private schools?

[WIFE] First through eighth grade I went to a parochial school, yes.

[HUSBAND'S COUNSEL] And then for high school, where did you go to school?

[WIFE] A public high school.

[HUSBAND'S COUNSEL] Which one?

[WIFE] McCluer.

[HUSBAND'S COUNSEL] And you're aware that your husband also went to a public grade school and high school, is that correct?

[WIFE] Yes.

[HUSBAND'S COUNSEL] This parochial school education, does it have some-thing to do with religion? I think you noted something else in your testimony.

[WIFE] No.

\* \* \* \* \* \*

[HUSBAND'S COUNSEL] And are you saying and representing to the Court that you had nothing to do with [daughter's] decision to enroll in Incarnate Word?

[WIFE] I had nothing to do with her decision. No, I did not.

[HUSBAND'S COUNSEL] Did you visit any other high schools with her?

[WIFE] No.

[HUSBAND'S COUNSEL] Did you file inquiries with Hazlewood Central, Aquinas–Mercy, and Rosary as to whether or not you could take college credit courses at those—at those places?

[WIFE] I—That is still hearsay. Yes, she could have.

■ The cost of private education can be considered in determining a child support award. *Dachsteiner v. Dachsteiner*, 894 S.W.2d 248, 250 (Mo.App.1995). A decision to increase child support that requires a non-custodial parent to pay a portion of private school tuition rests within the sound discretion of the trial court. *In re Marriage of Glueck*, 913 S.W.2d 951, 955 (Mo.App.1996). We defer to the trial court's judgment regarding private education unless the evidence is "palpably insufficient" to support it. *Id.*; *Markowski v. Markowski*, 793 S.W.2d 908, 909–10 (Mo.App.1990).

■ Here, the decision to attend a private high school was based solely on daughter's preference. This is not a case where the parent made a decision based on any expressed educational needs of the child. Wife testified that it made no difference to her which high school her daughter attended. According to Wife, she had nothing to do with her daughter's decision.

Section 452.340.8, RSMo 1994 provides that the presumed correct child support amount may be rebutted upon a finding that it is unjust or inappropriate after consideration of all relevant factors including those set out in § 452.340.1. Section 452.340.1(4), RSMo 1994 provides that a "court may order

either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary" after considering all relevant factors including the "educational needs" of the child.[3] The use of the terms "educational needs" implies something more than a preference. Wife presented no evidence that attendance at Incarnate Word was necessary because of any educational need of her daughter.

■ We recognize that deference is given to a custodial parent with respect to decisions concerning education beyond that provided by the state system. *Leahy v. Leahy,* 858 S.W.2d 221, 226 (Mo. banc 1993)(decision regarding child's attendance at out-of-state college); *Elliott,* 920 S.W.2d at 576. But, Wife's testimony reflects that the decision to attend Incarnate Word was effectively made by her daughter. Under these circumstances, we should not defer to Wife's decision.

■ On appeal, Wife relies, in part, on Husband's 1989 agreement to pay for his daughter's expenses at a private Catholic elementary school. The parties' agreement regarding educational expenses may be strong evidence to support a deviation from the child support guidelines and as to the appropriateness of a particular parent to pay the expenses. *In re Marriage of Glueck,* 913 S.W.2d at 955; *Rothfuss v. Whalen,* 812 S.W.2d 232, 240 (Mo.App.1991). The 1989 agreement provided that Husband would pay for a "Catholic elementary education" for his daughter. Wife was aware of the distinction between an elementary education and high school. She attended a parochial school through the eighth grade but attended a public high school. The evidence does not reflect that Husband agreed to pay for a private high school.[4]

■ Permitting a child to continue attendance at a private school can be a condition essential to the child's welfare. *In re Mar-*

*riage of Manning,* 871 S.W.2d 108, 111 (Mo. App.1994). But a different situation is presented where the child is changing schools. There may be cases where continuation of private schooling, from elementary to high school, meets an educational need of a child. Here, Wife presented no evidence that attendance at Incarnate Word met an educational need of her daughter based on her attendance at a parochial elementary school. The fact Husband agreed to pay for a private elementary school does not establish an educational need for his daughter to attend a private high school.

■ Wife also relies on Husband's testimony that he was concerned it would be "emotionally difficult" for his daughter if she had to leave Incarnate Word. Wife enrolled her daughter at Incarnate Word even though she knew she could not afford it and Husband stated he would not pay the expenses. If we were to rely on Husband's testimony, then a parent could expend funds for a private education, regardless whether necessary for the educational needs of the child, and then claim it is not in the child's best interest to discontinue the private schooling. Under the facts of this case, we do not find that Wife's unilateral decision to rely on her daughter's expressed preference should now form the basis to make a showing of an educational need for daughter to attend Incarnate Word.

In *Dachsteiner,* this court reversed a trial court's judgment that each parent pay one-half of the cost of the child's private high school education. *Dachsteiner,* 894 S.W.2d at 250–52. The mother failed to present evidence of when the child began private school or which private school the child was attending. *Id.* at 251. The only evidence regarding the best interests of the child to attend a private high school was the mother's testimony that the public school was a "jungle" and the reason for her daughter's private schooling was for her safety. *Id.* This

---

3. The Directions for Completion of Form 14 provides that "[o]ther extraordinary expenses may include the cost of attending tutorial sessions; special or private elementary and secondary schools to meet the particular educational needs of the child...." *See Elliott v. Elliott,* 920 S.W.2d 570, 575–76 (Mo.App.1996).

4. The parents' agreement regarding child support cannot preclude the trial court from setting the amount of support or changing its order as conditions change. *In re Marriage of Glueck,* 913 S.W.2d at 955.

court concluded that there were no cases affirming an order for payment of private education where the record was so sparse. *Id.* at 252.

Contrary to *Dachsteiner*, there was evidence here of when daughter began attending Incarnate Word. But, the evidence in this case regarding best interests of the child is if anything less persuasive than that in *Dachsteiner*. Here, Wife had no basis for her decision other than her daughter's expressed preference. The evidence here is "palpably insufficient" to support the trial court's judgment. Husband's first point is granted. The disposition of that point renders his second point moot.

Husband did not challenge the trial court's order for him to pay $400.00 in attorney's fees and that portion of the judgment is affirmed. The judgment of the trial court regarding the amount of child support and the retroactive award is reversed and remanded with directions to enter judgment consistent with this opinion.

AHRENS, C.J., and KAROHL, J., concur.